IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN PATRICK DAY,<br><br>                   Petitioner,<br><br>     vs.<br><br>JEFFREY BEARD, Secretary, California<br>Department of Corrections and<br>Rehabilitation,<br><br>                Respondent. | No. 2:11-cv-2938-JKS<br><br>MEMORANDUM DECISION |

Sean Patrick Day, a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Day is currently in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at the La Palma Correctional Center. Respondent has answered, and Day has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On February 6, 2007, Day was charged with aggravated sexual assault of a child under age 14 involving oral copulation, aggravated sexual assault of a child under age 14 involving sexual penetration, sexual penetration by a foreign object of a child under age 14, oral copulation of a child under age 14, lewd conduct with a child under age 14, felony child abuse, dissuading a witness from reporting a crime, and misdemeanor child abuse.

The prosecution informed Day's counsel that it intended to present at trial evidence of alleged uncharged sexual misconduct pursuant to California Evidence Code sections 1108, 1101(b). Defense counsel filed various motions in limine to exclude the proffered evidence. On July 14, 2008, the trial court held a hearing on the motions, but reserved judgment on whether to

exclude the evidence of alleged uncharged sexual misconduct until after it held a taint hearing[1] pursuant to California Evidence Code section 403.

The first day of the taint hearing was held the following day with the testimony of an expert witness who testified in Day's defense.  When court was adjourned at the end of the day, the trial judge stated that court would reconvene and the taint hearing continue on July 18, 2008, with the testimony of the prosecution's expert witnesses.

The taint hearing did not continue, however, because Day entered into a plea agreement on July 18, 2008.  Pursuant to the agreement, Day pled no contest to felony charges of sexual penetration with a foreign object of a child under age 14 and lewd conduct with a child under age 14.  The agreement provided that Day would be sentenced to 10 years in state prison but that execution of the sentence would be suspended and Day placed on 5 years of formal probation on certain terms and conditions, including 365 days in county jail.  Day would additionally waive all credit for time he had already spent in custody up to the date of the plea which, at that time, was roughly 22 months.  The remaining charges would then be dismissed.

Day signed a plea form acknowledging his understanding of the terms of the plea and waiver of his rights.  Day indicated on the form that he and his attorney had fully discussed the plea:

> Before entering this plea, I have had a full opportunity to discuss the following with my attorney:
> (1) The facts of my case;

---

[1] Taint hearings are pretrial reliability hearings used to assess whether the testimony of a child witness should be excluded as unreliable or coerced.  *See* Laura H. Nirider, Joshua A. Tepfer, and Steven A. Drizin, *Combating Contamination in Confession Cases*, 79 U. CHI. L. REV. 837, 860 (2012) (reviewing BRANDON L. GARRETT, CONVICTING THE INNOCENT: WHERE CRIMINAL PROSECUTIONS GO WRONG (2011)).

(2) The elements of the charged offenses, prior convictions, enhancements, and special allegations;
(3) Any defenses that I may have;
(4) My constitutional and statutory rights and waiver of those rights;
(5) The consequences of this plea; and
(6) Anything else I think is important to my case.

He also indicated on the form:

I offer my plea of guilty or no contest freely and voluntarily and with full understanding of everything in this form.  No one has made any threats; used any force against me, my family, or loved ones; or made any promises to me, except as listed in this form, in order to convince me to plead guilty or no contest.

He additionally acknowledged, "I understand that I have the right to be sentenced by the same judge or commissioner who takes my plea.  I give up that right and agree that any judge or commissioner may sentence me."

Before he formally entered his plea, Day engaged in an extensive colloquy with the court that corroborates the statements in his plea agreement as to his understanding of the agreement's terms and effects:

THE COURT: Okay.  And as I understood before, the time that he has in custody now is about a year and nine months.  Is he waiving that custody time?

[DEFENSE COUNSEL]: Yes.

THE COURT: Do you understand what this means is you – the year and a half or year and nine months that you have served, you won't get credit for that.  You are giving that up and you would serve actually, I guess, out of 365 days you would serve 270 days?

. . . .

[DAY]: Yes.

. . . .

THE COURT: . . . And the defendant to waive custody credits to the date of today's date, January [sic] 18th, 2008.

[DEFENSE COUNSEL]: July.

THE COURT: I'm sorry, July 18th, 2008.  Is that your understanding?

[DAY]: Yes.

After confirming that Day understood and agreed to waive each of his constitutional rights, the court asked Day about his discussions with defense counsel.  Specifically, Day affirmatively agreed that he had a full opportunity to discuss with his attorney the facts of his case, the elements of the crimes charged, his defenses, his constitutional rights and waiver of those rights, the consequences of the plea, and anything else that Day thought might have been important for his case.  The court stated, "Don't be bashful.  If you have got a question, feel free to ask your attorney.  And if not, I'll be glad to try to answer those questions."  Day replied that he had no questions.

He further confirmed to the court that he was "offering [his] plea of no contest freely and voluntarily with a full understanding of everything in [the plea agreement] form," and that no one had used force or violence against him or his family to pressure him into entering the plea. The court therefore concluded, "The court does make a factual finding that you did understand, you have knowledge and understand your constitutional rights, that you willingly, voluntarily and knowingly and understandingly waived those constitutional rights."

On July 23, 2008, Day's counsel informed the court that Day wished to withdraw his plea, but that counsel did not see any basis for doing so.  The court appointed substitute counsel to represent Day and draft a motion to withdraw his plea.  The motion claimed that Day's trial counsel had coerced Day into accepting the plea bargain and failed to fully inform him of the consequences of the plea.  The motion further asserted that, had Day been informed by trial

counsel or the court that his waiver of custody credits would apply not only to the 365-day

county jail term but also to the suspended state prison term, he would not have pled guilty.

     The trial court held an evidentiary hearing on the withdrawal motion on October 30,

2008.  Day testified that his trial counsel ignored his questions, failed to apprise him of all the

charges and their consequences, and "badgered" him into taking the deal.  Day's trial counsel

also testifed:

> [SUBSTITUTE COUNSEL]: And as a result of the deal, you also indicated to Mr. Day,
> did you not, that he would have to waive the year[-]and-a-half or two years that he had in
> custody?
>
> . . . .
>
> [TRIAL COUNSEL]: Exactly.  He'd waive his custody credits up to that time.
>
> [SUBSTITUTE COUNSEL]: Did you tell him at that time that if, in fact, he violated his
> probation after he was released, that – that waiver would mean that if he were to be sent
> to state prison that his custody time in the county jail would not apply?
>
> [TRIAL COUNSEL]: I told him simply he was – to take the deal, he's waiving his time.
>
> [SUBSTITUTE COUNSEL]: Did you tell him that?
>
> [TRIAL COUNSEL]: It's implicit.  I would not think of doing that.  And, in fact, when
> he wanted to withdraw his plea, that didn't come up.  It didn't come up until later when
> you were retained as his counsel.

     The trial court denied Day's motion, ruling that Day "was notified with more

particularity what was going to happen to those credits, not just some mere statement that you

give up your credits."  The court therefore concluded that "the sufficient findings by the court,

the plea form . . . seems to be explicit and unambiguous as to what was going on."

     On November 18, 2008, the superior court commissioner prepared to sentence Day.  Day

objected to the commissioner acting as a temporary judge, and the commissioner agreed to

postpone sentencing until the afternoon when a superior court judge would be on the bench.  The superior court judge then granted Day probation with a suspended state-prison sentence, pursuant to the terms of the plea agreement.  Approximately four months after he was released from county jail, Day violated his probation by committing an offense unrelated to the instant matter and was returned to prison in July 2009.  *See People v. Day*, No. C064589, 2011 WL 2623939, at *1 (Cal. Ct. App. July 6, 2011).

Day appealed his November 18, 2008, judgment to the California Court of Appeal on June 14, 2009, arguing that the trial court erred in denying his motion to withdraw his plea.  He argued that his plea was not knowingly, freely, or intelligently made, that he did not receive the benefit for which he bargained, and that the denial violated his due process rights.

The appellate court affirmed the judgment in an unpublished opinion.  *People v. Day*, No. C060667, 2010 WL 2091673 (Cal. Ct. App. May 26, 2010).  The court determined that the trial court's finding that the scope of the custody was adequately explained to Day was supported by the evidence from the plea colloquy and written plea form.  It additionally rejected his corresponding ineffective assistance claim, reasoning that Day's trial counsel had no duty to inform Day that his custody waiver also applied to the suspended prison sentence because such applicability "did not 'inexorably follow' from the plea, because it would never arise unless defendant violated his probation."  On July 7, 2010, Day filed a petition for review in the California Supreme Court.  The petition was summarily denied on August 11, 2010.

On July 22, 2011, Day filed a petition for a writ of habeas corpus in state superior court, again alleging ineffective assistance of counsel on the grounds that his trial counsel coerced him into accepting the plea deal and did not explain to him the ramifications of his plea.  The state

superior court denied the petition on August 17, 2011, noting that "the appellate court previously

heard this same issue on the very similar basis" and that "[t]he petition offers no additional

explanation of why the petitioner did not reject the offer when he had a chance or make any

statement regarding his concerns."

Day then filed a petition for a writ of habeas corpus in the Court of Appeal on September

6, 2011, which the appellate court summarily denied.  Day then filed a petition for a writ of

habeas corpus in the California Supreme Court, which the supreme court summarily denied on

February 22, 2012.

Day timely filed a petition for a writ of habeas corpus to this Court on March 19, 2012.

## II. GROUNDS/CLAIMS

Day asserts four grounds for habeas relief.  First, Day claims that the trial court erred in

refusing to allow Day to withdraw his no contest plea.  Second, Day asserts that his trial counsel

provided ineffective assistance by: 1) coercing Day into accepting the plea agreement; 2)

withholding information about the waiver of his custody credits; 3) failing to go over charges

and allegations with Day; and 4) refusing to talk to a witness on Day's behalf.  Third, Day

alleges that the trial court committed judicial misconduct because: 1) he was forced to sit in a

jury box away from his counsel during preliminary hearings; and 2) the commissioner, on the

day of sentencing, did not inform day that she was not a judge.  Finally, Day asserts a claim of

actual innocence.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"  *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court.  *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)).  Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear

and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Claim One: Withdrawal of Plea

Day first argues that the trial court erred in refusing to allow Day to withdraw his no contest plea. "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).  In order to demonstrate prejudice, Day must show "a reasonable probability that, but for counsel's errors, he would not have pleaded [no contest] and would have insisted on going to trial."  *Premo v. Moore*, 131 S. Ct. 733, 743 (2011) (quoting *Hill*, 474 U.S. at 59).

Day,  faces a high hurdle in seeking to overturn a plea on collateral review.  As the Supreme Court held in *Mabry*:

> It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.  It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence–because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.  It is only when the consensual character of the plea is called into question that the validity of a guilty plea may be impaired.  *In Brady v. United States,* 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed.2d 747 (1970), we stated the applicable standard:
>
> > [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

9

*Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984) (internal quotation marks and citations omitted),

*disapproved on other grounds* in *Puckett v. United States*, 556 U.S. 129, 138 n.1 (2009).

The standard of review of a denial of a motion to withdraw a guilty plea is the same in

federal courts as it is in California, *i.e.*, an abuse of discretion.  *United States v. Mayweather*, 634

F.3d 498, 504 (9th Cir. 2010).  Although the Ninth Circuit has suggested that an abuse of

discretion may also amount to a constitutional violation, *see Schell v. Witek*, 218 F.3d 1017,

1025 (9th Cir. 2000) (en banc), the Supreme Court has never held that abuse of discretion is an

appropriate basis for granting federal habeas relief.[2]  Indeed, quite to the contrary, the Supreme

Court has strongly suggested that, while abuse of discretion is an appropriate standard on direct

review, in a federal habeas proceeding it is not.  *Renico v. Lett*, 559 U.S. 766, 772-73 (2010) ("It

is not even whether it is was an abuse of discretion for her to have done so–the applicable

standard on direct review.  The question under AEDPA is instead whether the determination of

the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable

application of . . . clearly established Federal law." (quoting § 2254(d)(1))).  Accordingly, to the

extent that Day contends that the county court abused its discretion in not allowing Day to

withdraw his guilty plea, Day has failed to raise a claim of constitutional dimension cognizable

in this Court.

---

[2]        At one time, the Ninth Circuit viewed a state court ruling to be "objectively unreasonable" if it amounted to a clear error.  *Van Tran v. Lindsey*, 212 F.3d 1143, 1152-54 (9th Cir. 2000).  This is the test the Ninth Circuit uses in reviewing a trial court decision under the abuse of discretion standard.  *United States v. Ressam*, 679 F.3d 1069, 1086 (9th Cir. 2012) (en banc).  The Supreme Court noted *Van Tran's* statement of the test and expressly rejected it as inappropriate under the AEDPA.  *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (clear error standard is insufficiently deferential to state courts).

Even if this Court were to reach the issue, Day would not prevail.  Reduced to its essence, Day's argument is that his attorney failed to explain that the time he spent in prison before the plea agreement was reached would be waived not only to his 365-day county jail term, but would also be deemed waived if Day violated the terms of his probation and was sent back to jail pursuant to the suspended state sentence.  He contends that the failure of his attorney to explain that the custody waiver also applied to the suspended state sentence constituted ineffective assistance of counsel.

The Supreme Court, in reversing a lower court determination that a guilty plea was not voluntary, has explained that "the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it."  *Iowa v. Tovar*, 541 U.S. 77, 92 (2004) (quoting *United States v. Ruiz,* 536 U.S. 622, 629 (2002) (emphasis in original)).  Similarly, the Supreme Court has stated, "If [the defendant] . . . lacked a full and complete appreciation of all of the consequences flowing from his waiver, it does not defeat the State's showing that the information it provided to him satisfied the constitutional minimum."  *Id.* (quoting *Illinois v. Patterson*, 487 U.S. 285, 294 (1988)).

The state court's determination that the record, including Day's plea agreement form and his plea colloquy with the trial court, establishes that Day was sufficiently informed of the direct consequences of his plea is neither "contrary to, or involved an unreasonable application" of federal law or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Moreover, as the state court

properly determined on direct appeal, the waiver's application to the suspended state sentence

was a collateral and not direct consequence of his plea because the application would never arise

unless Day violated his probations.  *Cf. United States v. Powers*, No. 93-10533, 1994 WL

379138, at * 1 (9th Cir. July 20, 1994) (noting that "a probation violation is similar to other types

of events which have been termed collateral consequences' of a guilty plea"); *Jamison v. Klem*,

544 F.3d 266, 278 (3d Cir. 2008) ("[I]ncarceration for a violation of the probation that is

imposed pursuant to a guilty plea is a collateral consequence and due process does not require

that an accused be informed of all that can happen upon violating probation before entering a

guilty plea.").  That Day was unaware of the collateral consequence of his waiver therefore does

not affect the voluntariness of his plea, and Day is consequently not entitled to relief on this

ground.

Claim Two: Ineffective Assistance of Counsel

Day additionally claims his trial counsel was ineffective for coercing him into accepting

the plea agreement, failing to inform him about the extent of the waiver of his custody credits,

failing to fully review the charges and allegations with him, and for refusing to talk to his wife, a

potential witness, on his behalf.

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a

defendant must show both that his counsel's performance was deficient and that the deficient

performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one

in which "counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed by the Sixth Amendment."  *Id.*  The Supreme Court has explained that, if there is a

reasonable probability that the outcome might have been different as a result of a legal error, the

defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Thus, Day must show that his trial counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.  *See Hill,* 474 U.S. at 57.

An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs.  *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

It is through this highly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d) standard.  *See Knowles*, 556 U.S. at 123 (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

a.      Coercion

Day's claim that counsel coerced him into accepting the plea agreement is belied by the record.  "Solemn declarations in open court carry a strong presumption of verity.  The

subsequent presentation of conclusory allegations unsupported by specifics is subject to

summary dismissal, as are contentions that in the face of the record are wholly incredible."

*Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (citing *Machibroda v. United States*, 368 U.S. 487,

495-96 (1962)).

> Prior to entering his plea, Day indicated:
>
> I offer my plea of guilty or no contest freely and voluntarily and with full understanding of everything in this form.  No one has made any threats; used any force against me, my family, or loved ones; or made any promises to me, except as listed in this form, in order to convince me to plead guilty or no contest.

During his plea colloquy with the trial, he answered affirmatively when asked, "And you

are offering your plea of no contest freely and voluntarily with a full understanding of everything

in this form; is that correct?"  He further confirmed that no one had made any threats or used

force or violence against him or his family to pressure him into entering his plea.

Day has failed to present evidence of coercion that would overcome the presumption of

verity given his earlier statement.  Day therefore cannot prevail on his claim that his attorney

coerced him into accepting the plea agreement.

> b.    Withholding Information about the Custody Credits

Day also presented to the superior court in his state petition for habeas relief his claim

that his trial counsel was ineffective for withholding information about the custody credits.  The

court rejected the claim, concluding that Day's trial counsel had no duty to inform Day that his

custody waiver also applied to the suspended prison sentence because such applicability "did not

'inexorably follow' from the plea, because it would never arise unless defendant violated his

probation."

14

Under the facts of this case, this Court cannot find that the superior court's determination was "contrary to, or involved an unreasonable application" of federal law or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  As previously discussed, the state superior court correctly concluded that the custody waiver's application to the suspended prison sentence was a collateral consequence and, as such, Day's counsel was not required to inform Day of that specific consequence.  Day's argument that his counsel was ineffective for withholding information about the custody credits therefore fails.

      c.      Failing to Review the Charges and Allegations with Day

Day's claim that counsel failed to review the charges and allegations with him is similarly contradicted by the record and also must fail.

The plea agreement form Day executed specifically states:

Before entering this plea, I have had a full opportunity to discuss the following with my attorney:
(1) The facts of my case;
(2) The elements of the charged offenses, prior convictions, enhancements, and special allegations;
(3) Any defenses that I may have;
(4) My constitutional and statutory rights and waiver of those rights;
(5) The consequences of this plea; and
(6) Anything else I think is important to my case.

During his plea colloquy with the court, Day confirmed that he was "offering [his] plea of no contest freely and voluntarily with a full understanding of everything in [the plea agreement] form."  Moreover, he affirmatively answered when asked by the trial court whether he had a full opportunity to discuss with his attorney the facts of his case, the elements of the crimes charged, his defenses, his constitutional rights and waiver of those rights, the

consequences of the plea, and anything else that Day thought might have been important for his case.

The record therefore demonstrates that Day understood the charges and allegations against him and that he had fully consulted with his attorney, and Day fails to allege any facts that would compel this Court to disregard the statements he made under oath in open court.

        d.        Refusing to Talk to a Witness on Day's Behalf

Day claims that his trial counsel refused his request to locate and talk to Day's second wife even though "she could testify to the early allegations that [Day] was innocent of." Pet. at 29-30. Day asserts that the refusal violated his rights to due process and effective counsel. *Id.*

Day did not present this argument in either his direct appeal of his conviction or in his habeas petitions filed in the state courts. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petitioner to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). To have properly exhausted his state court remedies, Day must have presented both the legal arguments and the factual basis to the highest state court. *See Peterson v. Lampert*, 319 F.3d 1153, 1155-56 (9th Cir. 2003). Unexhausted claims must be dismissed. *See Rhines v. Weber*, 544 U.S. 269, 275-78 (2005). However, this Court need not rely on this basis as it may deny the petition on the merits notwithstanding the lack of exhaustion of state court remedies. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits,

16

notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

The Supreme Court has stated that counsel need not undertake exhaustive witness investigation.  The question is not "what is prudent or appropriate, but only what is constitutionally compelled."  *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984).  While "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," an attorney's strategic decisions "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *Strickland*, 466 U.S. at 690.  "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  *Id.* at 690-91.

In support of his argument, Day avers only that the proposed witness "could testify to the early allegations that [Day] was innocent of."  Such conclusory statement is insufficient to overcome the strong presumption that counsel's performance fell within the wide range of reasonable professional assistance or that his defense was prejudiced as required by *Strickland*.  Moreover, Day's statement that the prosecution informed him that his second wife was willing to testify against him calls into doubt any assertion that her testimony would have impacted the outcome of the case in Day's favor.  Day therefore cannot prevail on this ineffective assistance claim.

17

<u>Claim Three: Judicial Misconduct</u>

Day also claims that he was subject to two reversible judicial errors.  First, Day alleges that his right to due process was violated when he "was sat" in the jury box, about five to ten feet away from his counsel, during a preliminary hearing, and "the trial judge did not ask [him] if [he] wanted [to sit] with [his] attorney."  Respondent correctly contends that, because this claim occurred before Day entered his plea, it is not cognizable on federal habeas review.  The Supreme Court has directly addressed the subject, stating:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann* [*v. Richardson*, 397 U.S. 759 (1970)].

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

Consequently, review of this claim is foreclosed.

Second, Day contends that, on the day he was sentenced, he "went before a commissioner who did not inform [him] that she was not a judge" and who stated that Day "was getting sentenced that day whether [he] liked it or not."  The record indicates that the prosecution noted that, in his plea agreement, Day did not agree to have a commissioner sentence him.  In response, the commissioner stated:

> Mr. Day, I am the superior court commissioner.  You do have the right to have this matter heard by a superior court judge.  If you would like that to occur, then I will trail this matter to this afternoon when Judge Masunaga is on the bench and . . . the sentencing can proceed at that time.

Day was sentenced by Judge Masunaga that afternoon.  Accordingly, the terms of Day's plea agreement were fully upheld.  To the extent that Day argues that the commissioner erred in

18

not delaying his sentencing to allow Day to consider whether he should withdraw the plea, a

petitioner's statement in open court that he had sufficiently discussed the plea with his attorney

defeats any such claim.  *See Doe v. Woodford*, 508 F.3d 563, 570-71 (9th Cir. 2007) (on habeas

review, determining that, where the petitioner confirmed under oath and in open court that he

had enough time to talk with his attorneys, the fact that petitioner had only two hours to consider

the plea did not undermine the voluntariness of his plea).  The commissioner additionally

informed Day that "the sentencing will not interfere with Mr. Johnson's opportunity to file a writ

or file an appeal for you."  Day provides no argument or evidentiary support that even suggests

that his due process rights were somehow violated by the commissioner's actions in this case.

He is therefore not entitled to habeas relief on this ground either.

> Claim Four: Actual Innocence

Finally, Day attempts to bring a claim of actual innocence.[3]  As Respondent correctly

notes, while a federal habeas petitioner may assert a claim of actual innocence to overcome a

procedural bar to review, *Schlup v. Delo*, 513 U.S. 298, 326 (1995), the Supreme Court has never

held that a freestanding claim of innocence is cognizable in a § 2254 petition filed by a non-

capital defendant, *see House v. Bell*, 547 U.S. 518, 554-55 (2006); *Dist. Attorney's Office for*

*Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71-72 (2009).  The Supreme Court has instead

---

[3]     Despite Day's citation in the plea agreement to *People v. West*, 91 Cal. Rptr. 385 (Cal. 1970), whether the state trial court must find a factual basis for Day's no contest plea is not at issue here because Day did not assert actual innocence prior to entering his plea and does not challenge the sufficiency of the factual basis of his plea.  *See Loftis v. Almager*, 704 F.3d 645, 648 (9th Cir. 2012) (holding that no constitutional issue cognizable under § 2254 exists, despite citations to *West*, where the state trial court's failure to find a factual basis for a no contest plea is "unaccompanied by protestations of innocence").  Moreover, during Day's plea colloquy, defense counsel stipulated that the police reports provided a factual basis for the entry of his plea.

declined to answer the question, noting that where "[p]etitioner has failed to make a persuasive

showing of actual innocence[,] . . . the Court has no reason to pass on, and appropriately

reserves, the question whether federal courts may entertain convincing claims of actual

innocence." *Herrera v. Collins*, 506 U.S. 390, 427 (1993) (O'Connor, J., concurring).  The

Ninth Circuit, however, has assumed as much without deciding the question and has held that "a

habeas petitioner asserting a freestanding innocence claim must go beyond demonstrating doubt

about his guilt, and must affirmatively prove that he is probably innocent." *Carringer v.

Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (en banc) (adopting the view of Justice Blackmun in

his dissent in *Herrara*, 506 U.S. at 442-44 (Blackmun, J., dissenting)).  Following the lead of the

circuit, assuming, but not deciding, that a freestanding actual innocence claim is cognizable in a

§ 2254 proceeding, it is necessary to apply the appropriate standard to the evidence.

  In the context of the hypothetical freestanding actual innocence claim, the Supreme Court

has described the threshold as "extraordinarily high." *Herrera*, 506 U.S. at 417.  "The sequence

of the Court's decisions in *Herrara* and *Schlup*–first leaving unresolved the status of

freestanding claims and then establishing the gateway standard–implies at the least that *Herrara*

requires more convincing proof of innocence than *Schlup*." *House*, 547 U.S. at 555.  In fact, one

Ninth Circuit judge has observed that prevailing on freestanding actual innocence claims

"imposes a much more difficult–indeed possibly insurmountable–burden on the petitioner."

*Smith v. Baldwin*, 510 F.3d 1127, 1155 n.8 (9th Cir. 2007) (en banc) (Reinhardt, J., dissenting).

  Measured against this standard, Day has fallen far short of establishing his actual

innocence.  Day has not presented any "new" evidence of the type or quantity that would call his

conviction into question.  The only evidence he provides is his own sworn statement.  Such

evidence does not constitute the type of new, reliable evidence required to support an actual

innocence claim under *Schlup* as it is inherently unreliable.  *See, e.g.*, *Herrara*, 506 U.S. at 423

(1993) (O'Connor, J., concurring) (post-trial affidavits "are to be treated with a fair degree of

skepticism").  Moreover, the fact that Day consented to a no contest plea militates against his

actual innocence claims.  *See Smith v. Baldwin*, 510 F.3d 1127, 1140 n.9 (9th Cir. 2007) ("We

are aware of a potential incongruity between the purpose of the actual innocence gateway

announced in *Schlup* and its application to cases involving guilty (or no contest) pleas.").

Absent any additional evidence of the nature or quality required by *Schlup*, Day has failed to

make a credible showing of actual innocence and cannot demonstrate that it is more likely than

not that no reasonable juror would have convicted him.  *Schlup*, 513 U.S. at 324.  Consequently,

Day is not entitled to relief on this ground.

## V. CONCLUSION AND ORDER

Day is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Amended Petition under 28 U.S.C. § 2254

for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain

a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree

with the district court's resolution of his constitutional claims or that jurists could conclude the

issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the

Ninth Circuit Court of Appeals.  *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: September 4, 2013.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge